1

2

3

4

5

6

7

8               UNITED STATES DISTRICT COURT

9             FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JUSTIN MICHAEL LANGSTON,          No.  2:12-cv-2703 MCE GGH (HC)

12              Petitioner,

13        v.                           FINDINGS AND RECOMMENDATIONS

14   RON BARNES,

15              Respondent.

16

17        Petitioner is a state prisoner proceeding pro se with an application for writ of habeas

18   corpus pursuant to 28 U.S.C. § 2254.  By this action, petitioner challenges a judgment of

19   conviction entered against him in the Shasta County Superior Court in 2008.  This matter is now

20   before the Court on respondent's motion to dismiss the action as barred by the applicable statute

21   of limitations.

22   BACKGROUND

23        After being charged with 44 counts of offenses against his daughter, who was under the

24   age of 14 years old, plaintiff entered into a negotiated settlement whereby he pled no contest to

25   seven counts of sexual offenses and one count of furnishing her with marijuana in exchange for a

26   stipulated sentence of 35 years 8 months and the dismissal of the remaining charges.  Lod. Docs.

27   /////

28   /////

1

1, 2.  On January 12, 2009, petitioner filed an appeal with the California Court of Appeal.[1]  The Court of Appeal denied petitioner's appeal on January 12, 2010.  Lod.Doc. 2.  Petitioner did not seek review in the California Supreme Court.

Subsequently, petitioner filed four pro se state post-conviction collateral challenges, all of which were petitions for writs of habeas corpus.  On July 10, 2011[2], petitioner filed for writ of habeas corpus in the California Supreme Court.  Lod. Doc. 3.  This petition was denied on December 14, 2011.  Lod. Doc. 4.  On January 26, 2012, petitioner filed for writ of habeas corpus in the Shasta County Superior Court.  Lod. Doc. 5.  The court denied this petition on February 6, 2012, citing In re Clark, 5 Cal.4th 750 (1993), because petitioner failed to justify the more than three year delay in seeking habeas relief.  Lod. Doc. 6.  On March 6, 2012, petitioner filed for writ of habeas corpus in the California Court of Appeal.  Lod. Doc. 7.  This petition was summarily denied on March 15, 2012.  Lod. Doc. 8.  On March 25, 2012, petitioner filed for writ of habeas corpus in the California Supreme Court.  Lod. Doc. 9.  The court denied this petition on June 20, 2012, citing In re Robbins, 18 Cal.4th 770, 780 (1998) and In re Clark, 5 Cal.4th at 750. Lod. Doc. 10.

Petitioner filed an application for leave to file a second or successive petition for a writ of habeas corpus with the Ninth Circuit Court of Appeals on July 26, 2012.  ECF No. 1.  In the application, petitioner noted that he had not yet filed an application for a writ of habeas corpus in a district court, but he argued for habeas relief under § 2244(b)(2)(B)(i) and for the court to hear his "newly presented claim."  Id. at 2, 8.  The Ninth Circuit Court of Appeals transferred the application to this court, which was filed on October 15, 2012.  Id.  This court dismissed the application, directing plaintiff to file his habeas claims on the appropriate form.  ECF No. 5.  On

---

[1]  This date is according to the California Appellate Courts Case Information System - http://appellatecases.courtinfo.ca.gov/index.html - case number C060855.

[2]  The filing dates of petitioner's state and federal habeas petitions are given the benefit of the mailbox rule, pursuant to Houston v. Lack, 487 U.S. 266, 275–76, 108 S. Ct. 2379, 2385 (1988) (pro se prisoner filing is dated from the date prisoner delivers it to prison authorities).  Stillman v. Lamarque, 319 F.3d 1199, 1201 (9th Cir. 2003) (mailbox rule applies to pro se prisoner who delivers habeas petition to prison officials for the court within limitations period).  Respondent applies the same rule in his motion to dismiss.  See ECF No. 19, 2 n.2.

1    February 17, 2013, petitioner filed the operative federal petition for writ of habeas corpus.[3]  ECF

2    No. 12.

3    DISCUSSION

4          Respondent moves for dismissal on the ground that the instant petition is untimely under

5    the AEDPA.  The statute of limitations for federal habeas corpus petitions is set forth in 28 U.S.C.

6    § 2244(d)(1):

7               A 1–year period of limitation shall apply to an application for a writ
               of habeas corpus by a person in custody pursuant to the judgment of
8               a State court. The limitation period shall run from the latest of—

9               (A) the date on which the judgment became final by the conclusion
               of direct review or the expiration of the time for seeking such
10              review;

11              (B) the date on which the impediment to filing an application
               created by State action in violation of the Constitution or laws of
12              the United States is removed, if the applicant was prevented from
               filing by such State action;
13
               (C) the date on which the constitutional right asserted was initially
14              recognized by the Supreme Court, if the right has been newly
               recognized by the Supreme Court and made retroactively applicable
15              to cases on collateral review; or

16              (D) the date on which the factual predicate of the claim or claims
               presented could have been discovered through the exercise of due
17              diligence.

18   Under 28 U.S.C. § 2244(d)(2):

19              The time during which a properly filed application for State post-
               conviction or other collateral review with respect to the pertinent
20              judgment or claim is pending shall not be counted toward any
               period of limitation under this subsection.
21

22         Following the January 12, 2010, affirmance of judgment by the state appellate court,

23   petitioner failed to file a petition for review in the California State Supreme Court.  Petitioner's

24   conviction became final on February 24, 2010, 40 days after the state appellate court denied his

25   petition.  As respondent observes, the AEDPA statute began to run the following day, on

26   February 25, 2010.  Patterson v. Stuart, 251 F.3d 1243, 1246 (9th Cir.2001).  Therefore, absent

27   _____

28   [3]  This document is titled First Amended Petition on the docket, which is inconsequential to the
     court's determination.

1    any applicable tolling or an extended initiation of the limitations period, petitioner had until

2    February 24, 2011 to file a timely federal habeas petition.  Petitioner does not dispute that,

3    without tolling or an extension, February 24, 2011 was the end of the limitations period.

4         As an initial matter, petitioner asserts that his filing of the application for leave to file a

5    second or successive petition for a writ of habeas corpus with the Ninth Circuit Court of Appeals,

6    rather than the petition filed in this court, initiated his federal application for writ of habeas

7    corpus.  Petitioner also claims that the one-year statute of limitations period did not begin until

8    "late 2011," when the factual predicate of his claims were first capable of discovery through the

9    exercise of due diligence.  Furthermore, petitioner argues that he is entitled to statutory tolling

10    and equitable tolling based on his assertion that numerous external factors caused the delay and

11    he suffered from mental and physical impairments.

12    I.  <u>Federal Petition Filing Date</u>

13         As previously mentioned, petitioner argues that the date on which he filed the application

14    for leave to file a second or successive petition for a writ of habeas corpus with the Ninth Circuit

15    Court of Appeals, July 22, 2012[4], is the date he initiated his federal habeas action.  ECF No. 23,

16    6.  He argues that his "accidental" filing in the Ninth Circuit of his habeas petition, which was

17    also on the wrong form, should nonetheless count as the operative filing date.  <u>Id.</u> at n.2.

18    Respondent does not address petitioner's claim, and merely asserts that petitioner filed his federal

19    petition on February 17, 2013.  This issue is relevant because if this court finds that the operative

20    filing date is July 22, 2012 and that the statute of limitations began at some point after petitioner's

21    judgment became final, his application may have been filed within the limitation period.

22    However, if this court finds that the operative filing date is February 17, 2013, petitioner's

23    arguments that he is entitled to tolling until "late 2011" will be moot, as his federal petition will

24    have been filed after the one-year statute of limitations.

25    /////

26

---

27    [4]  Petitioner actually argues that the date he initiated his federal habeas action was on July 26,
2012, but petitioner's argument did not include the application of the mailbox rule.  <u>See</u> <u>supra</u> n.2.

28    Petitioner signed the application on July 22, 2012.  ECF No. 1.

1         Although petitioner's filing in the Ninth Circuit was on the wrong form, petitioner was

2  clearly seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  On this form, he marked

3  that he had never filed a petition or motion for habeas corpus relief in a federal court under 28

4  U.S.C. §§ 2254, 2255.  ECF No. 1, 2.  He also set forth his claim, provided supporting facts, and

5  made arguments concerning the timeliness of the application.  Id. at 5-8.

6         It took the Ninth Circuit roughly three months to transfer petitioner's filing to this court

7  and another month before this court issued its order dismissing the petition with leave to file one

8  on the appropriate form.  ECF Nos. 1, 5.  Regardless of petitioner's errors, it is clear that he

9  intended to file his initial habeas petition on July 22, 2012, and he should not be penalized for the

10  four months between his initial filing and its transfer.  Otherwise, his filing error alone would

11  consume at least one-third of the limitations period.  Therefore, July 22, 2012 should be

12  considered the date on which petitioner initiated his federal habeas action.

13  II.  Initiation of Limitations Period

14         Petitioner claims that the initiation of the limitations period did not begin until late

15  2011when he first discovered the factual predicate of his habeas claims.  Under 28 U.S.C. §

16  2244(d)(1)(D) the one-year limitations period commences on the date the factual predicate of the

17  claim or claims presented could have been discovered through the exercise of due diligence.  See

18  Souliotes v. Evans, 622 F.3d 1173, 1178 (9th Cir. 2010), vacated on other grounds, 654 F.3d 902

19  (9th Cir. 2011).  A prisoner knows of the factual predicate of a claim "when . . . he knows (or

20  through the diligence could discover) the important facts, not when the prisoner recognizes their

21  legal significance."  Hasan v. Galaza, 254 F.3d 1150, 1154 n. 3 (9th Cir. 2001) (citing Owens v.

22  Boyd, 235 F.3d 356, 359 (7th Cir. 2000)).

23         Petitioner claims that it wasn't until late 2011when he first discovered, with the help of

24  another inmate, his diagnosis of "Multiple Endocrine Neoplasias Type 1" and that his trial

25  counsel provided ineffective assistance by not properly investigating and pursuing issues related

26  to his mental health.  ECF No. 23, 1-5.[5]  He asserts that he was unaware of these facts because

27

28

---

[5] The undersigned assumes petitioner means Multiple Endocrine Neoplasia Type 1.  This is a disease that causes tumors in the endocrine glands and duodenum.  It may cause

1    during and after the trial he was suffering from extreme mental and emotional stress, having

2    psychotic episodes, and under the influence of numerous psychotropic prescriptions.  Id. at 3-4.

3    He claims that because of these conditions his plea deal was involuntary.  Id. at 7.

4            Respondent argues that this claim is devoid of specifics and lacks supporting

5    documentation.  ECF No. 30, 9.  Respondent questions petitioner's claims of severe mental

6    impairments and asserts that petitioner was aware of any mental issues he had during and after his

7    trial.  Id. at 10.  Specifically, respondent points to the fact that two different psychologists

8    performed a competency evaluation of petitioner and that both found he was competent to stand

9    trial.  Id.; Lod. Doc. 18.  The trial court then found petitioner competent based on those two

10   reports.  Lod. Doc. 20.  Later, when petitioner expressed confusion about the proceedings, the

11   trial court again ordered a competency hearing and petitioner was again found competent to stand

12   trial.  Lod. Docs. 18, 20.  Furthermore, during the entry of his plea, the trial court asked petitioner

13   if he was under the influence of any substance that might alter his competency to make a plea and

14   asked whether he understood the implications of a plea.  Lod. Doc. 19.  Petitioner responded that

15   he was not under the influence of any drugs that would impact his thinking and that he understood

16   the proceedings.  Id.  Respondent also points to the fact that petitioner prepared and filed an

17   appellant's supplemental brief on July 9, 2009, when he filed his direct appeal, which negates his

18   claims.  This brief states that "appellant's mental disorder or developmental disability . . .

19   prevented him from understanding the nature of the . . . plea."  Lod. Doc. 20.

20           The evidence clearly indicates that petitioner's assertion that he only discovered the

21   factual predicate of his habeas claims in late 2011 is erroneous.  In his direct appeal, in 2009,

22   plaintiff acknowledged that he had a mental disorder that affected his plea.  Although petitioner

23   alleges that he received help drafting his petitions, this aid surely was not given in an isolated

24   environment without his knowledge.  See ECF No. 12, 10.  On this basis alone, it is clear that

25   petitioner discovered factual predicate of his claims prior to 2011.  Moreover, the three

26   competency evaluations and questioning from the trial judge prior to his plea certainly would

27

28   hyperparathyroidism.  See endocrine.niddk.nih.gov. It is difficult to understand how this
     diagnosis would relate to mental health problems

1    have made petitioner aware of any issues relating to his mental health.

2           Because the factual predicate for petitioner's claims were known or, despite petitioner's

3    alleged mental disabilities, could have been discovered through the exercise of due diligence at

4    trial and when petitioner filed his direct appeal, there is no basis for the application of

5    §2244(d)(1)(D) to extend the initiation of the limitations period.  Therefore, the limitations period

6    began on February 25, 2010, the day after petitioner's judgment became final by the expiration of

7    the time remaining for him to seek direct review.  See 28 U.S.C. § 2244(d)(1)(A).

8    III.  Statutory Tolling

9           Petitioner argues that he is entitled to statutory tolling per 28 U.S.C. § 2244(d)(2).  Under

10   AEDPA, the period of limitation is tolled while a "properly filed" application for state post-

11   conviction or other collateral review is pending.  28 U.S.C. § 2244(d)(2).  The United States

12   Supreme Court has explained that in order for a state habeas petition to be "properly filed" for

13   purposes of statutory tolling, the petition's delivery and acceptance must be in compliance with

14   the laws and rules governing such filings.  Pace v. DiGuglielmo, 544 U.S. 408, 413–14, 125 S.

15   Ct. 1807 (2005). "[T]ime limits, no matter their form, are 'filing' conditions."  Id. at 417, 125

16   S.Ct. at 1814.  "When a post-conviction petition is untimely under state law, that is the end of the

17   matter for purposes of § 2244(d)(2)."  Id. at 414, 125 S. Ct. at 1812.

18          Petitioner's conviction became final on February 24, 2010 and the one-year limitations

19   period began to run the next day, on February 25, 2010.  The limitations period expired on

20   February 24, 2011.  Petitioner's first petition for writ of habeas corpus in the state supreme court

21   was filed on July 10, 2011.[6]   Because petitioner's first state petition was filed roughly four and

22   one-half months after the expiration of the statute of limitations, section 2244(d)(2) does not

23   permit the filing to toll the limitations period.  See Ferguson v. Palmateer, 321 F.3d 820, 823 (9th

24   Cir. 2003); Jiminez v. Rice, 276 F.3d 478, 482 (9th Cir. 2001).

25   /////

26   _____

[6] At times, if a state petition is filed first in an appellate court or state supreme court, the
27   petitioner will be told to start over in the lowest court.  Such a directive brings into question
     whether the first petition was properly filed. However, in the case here, the first petition filed in
28   the state supreme court was denied on the merits.  It therefore counts as the first petition.

1    Petitioner argues that his state habeas petitions were timely filed because the predicate

2    facts of the underlying claims were unable to be discovered until late 2011, despite the exercise of

3    due diligence, given his mental impairment.  ECF No. 23, 5.  However, the undersigned has

4    already dealt with this argument with respect to the proper calculation of the limitations period.

5    He also argues that his state actions were properly filed because the state's procedures did not

6    provide him with a fair opportunity to seek relief due to his mental deficits, and thus the state

7    courts' refusals to hear his claims have no bearing.  Id. at 5-6.  Petitioner's arguments are

8    misplaced and are more suited for his arguments concerning equitable tolling.  As respondent

9    notes in his reply and as set forth above, the statutory tolling analysis under § 2244(d)(2) is

10   complete once it is established that the post-conviction petition is untimely under state law.  See

11   Pace, 544 U.S. at 414, 125 S. Ct. at 1812.  Thus, petitioner's state court petitions, which were

12   denied as untimely, should not provide for statutory tolling of the limitations period.

13   IV.  Equitable Tolling

14   Petitioner argues for the application of equitable tolling on the grounds that numerous

15   external factors delayed the filing of the instant petition.  ECF No. 12, 9-10, 12, 18, 24.  In

16   particular, petitioner argues that his petition should be equitably tolled based on his being

17   mentally impaired throughout the legal proceedings, from "the trial court level . . . through the

18   date of the instant motion."  ECF No. 23, 1.

19   The Supreme Court has held "that § 2244(d) is subject to equitable tolling in appropriate

20   cases."  Holland v. Florida, 560 U.S. 631, 130 S. Ct. 2549, 2560 (2010).  Petitioner relies on

21   Laws v. Lamarque, 351 F.3d 919 (9th Cir. 2003), to support his argument for equitable tolling

22   based on a claim of mental illness.  ECF No. 23, 9.  Noting therein that equitable tolling is

23   available in this circuit only when "'when extraordinary circumstances beyond a prisoner's

24   control make it impossible to file a petition on time' and 'the extraordinary circumstances were

25   the cause of his untimeliness,'" the Ninth Circuit observed that grounds for equitable tolling

26   under § 2244 (d) are "highly fact-dependent."  Laws, 351 F.3d at 922, citing Spitsyn v. Moore,

27   345 F.3d 796, 799 (9th Cir. 2003); id., quoting Whalem/Hunt v. Early, 233 F.3d 1146, 1148 (9th

28   Cir. 2000).  The Ninth Circuit held that it was an abuse of discretion for the district court to deny

8

1   Laws's petition, where he claimed he was mentally ill between April 23, 1996 (the date of

2   AEDPA's enactment) and May 16, 2000, when his first state habeas petition was filed and

3   entitled to equitable tolling, without the court's having ordered development of the factual record

4   supporting the claim.  Id., at 922-23.  The case also makes clear that the Ninth Circuit observed

5   that it had previously "held that a 'putative habeas petitioner's mental incompetency [is] a

6   condition that is, obviously, an extraordinary circumstance beyond the prisoner's control,' so

7   'mental incompetency justifies equitable tolling' of the AEDPA statute of limitations." Laws,

8   351 F.3d at 923, citing Kelly, 163 F.3d at 541.  In doing so, the Laws court noted, as a backdrop,

9   that the trial court had expressed its concern about Laws's competency and had ordered

10  psychiatric examinations and a hearing under Cal. Penal Code § 1368, and had found, in the face

11  of conflicting expert testimony that Laws was "'for the present at least'" competent to stand trial.

12  Laws, 351 F.3d at 921.  The Laws court stated that the determination of competency at the time of

13  trial (despite the evidence of serious mental illness) did not bear on the competency of Laws for

14  the period of time at issue for which no medical records had been provided.

15          A Ninth Circuit panel has set forth that "eligibility for equitable tolling due to mental

16  impairment requires the petitioner to meet a two-part test:"

17          1) First, a petitioner must show his mental impairment was an
            "extraordinary circumstance" beyond his control, see Holland, 130
18          S.Ct. [2549] at 2562 [(2010)], by demonstrating the impairment
            was so severe that either
19
20                  (a) petitioner was unable rationally or factually to personally
                    understand the need to timely file, or
21
                    (b) petitioner's mental state rendered him unable personally
22                  to prepare a habeas petition and effectuate its filing.
                    [Footnote 2–see below]
23
            2) Second, the petitioner must show diligence in pursuing the
24          claims to the extent he could understand them, but that the mental
            impairment made it impossible to meet the filing deadline under the
25          totality of the circumstances, including reasonably available access
            to assistance. See id.
26  Bills v. Clark, 628 F.3d 1092, 1099-1100 (9th Cir. 2010) (emphasis in original).  The court went

27  on to state:

28  /////

                                                    9

1

2

3

4

5

6

> In practice, then, to evaluate whether a petitioner is entitled to equitable tolling, the district court must: (1) find the petitioner has made a non-frivolous showing that he had a severe mental impairment during the filing period that would entitle him to an evidentiary hearing; (2) determine, after considering the record, whether the petitioner satisfied his burden that he was in fact mentally impaired; (3) determine whether the petitioner's mental impairment made it impossible to timely file on his own; and (4) consider whether the circumstances demonstrate the petitioner was otherwise diligent in attempting to comply with the filing requirements.

7   Id. at 1100-01.

8         Petitioner thoroughly discusses these standards for equitable tolling due to a mental

9   impairment. ECF No. 23, 9-12. However, he presents almost no evidence in support of an

10  argument that he is entitled to such tolling. Petitioner does not cite to any medical records or

11  present any facts regarding his mental or physical impairments. In his opposition, petitioner

12  attached a website printout which defines, describes, lists the symptoms for, and generally

13  discusses Multiple Endocrine Neoplasia Type 1. ECF No. 23, 18. He also attached a handwritten

14  document that he represents as a list of medications he was "under the influence of" "during the

15  plea," totaling 19 medications. Id. at 2, 20. However, as far as discussing facts that are relevant

16  to his alleged entitlement to equitable tolling during the *post-AEDPA limitations period*,

17  petitioner makes no argument. He merely asserts "the fact that a petitioner was sufficiently

18  competent to file petitions during one period does not necessarily mean he was competent during

19  some other period." ECF Id. at 12. Petitioner also asserts that he is entitled to an evidentiary

20  hearing to prove his mental impairment during the filing period. Id. at 12-13.

21        Respondent contends that petitioner "has utterly failed to carry his burden of making a

22  prima facie showing that he suffered from a severe mental infirmity during the running of the

23  limitations period" and that this court "could deny Petitioner's request for equitable tolling on this

24  basis alone." ECF No. 30, 4-5. Indeed, petitioner has not made a non-frivolous showing that he

25  had a severe mental impairment during the filing period. See Bills, 628 F.3d at 1100.

26  Nonetheless, respondent has gathered, lodged with the court, and thoroughly discussed

27  petitioner's medical records from the California Department of Corrections and Rehabilitation.

28  Lod. Docs. 11-16. These records make clear that petitioner did not have so severe a mental

1  impairment from February 25, 2010 through February 24, 2011, that that would warrant an

2  evidentiary hearing in order to determine whether he satisfied his burden that he was in fact

3  mentally impaired.

4      A review of the medical records demonstrates that petitioner was able to consistently

5  communicate clearly with medical professionals.  Lod. Docs. 11-16.  On March 10, 2010,

6  petitioner was noted to suffer from depression and suicide ideation, along with a history of

7  suicide attempts.  Lod. Doc. 11, 7.  At this time, petitioner was given a Global Assessment of

8  Functioning[7] (GAF) score of 65, which is far from a score that would be representative of a

9  severe mental impairment.  Id. at 9.  On May 24, 2010, petitioner was reported as being stable and

10  having no suicidal ideations or attempts.  Id. at 12.  On February 9, 2011, it was noted that

11  petitioner had continued depressive issues, but no other remarkable mental impairments.  Id.at 14-

12  16.  The records are clearly insufficient to establish a severe mental impairment.  The records are

13  equally unavailing in regards to petitioner's physical impairments.  See Lod. Docs 13-14.

14      Thus, petitioner has not shown that his mental impairments, physical impairments, or a

15  combination thereof are extraordinary circumstances beyond his control that were the cause of his

16  untimeliness.  See Laws, 351 F.3d at 922.  Petitioner should not be entitled to equitable tolling,

17  and his claims should remain barred by the statute of limitations.

18  CONCLUSION

19      Accordingly, IT IS HEREBY RECOMMENDED that respondent's motion to dismiss for

20  failure to comply with 28 U.S.C. § 2244(d)'s one year limitation period, filed June 7, 2013, (ECF

21  No. 19) be GRANTED and this case DISMISSED.  Based on the above discussion, the

22  undersigned does not recommend that a Certificate of Appeal (COA) issue.

23      These findings and recommendations are submitted to the United States District Judge

24  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

25  _____

26  [7]  Global Assessment of Functioning is a scale reflecting the "psychological, social, and
occupational functioning on a hypothetical continuum of mental health-illness."  Diagnostic and
Statistical Manual of Mental Disorders at 34 (4th ed. 2000) ("DSM IV-TR").  A score of 65

27  represents some mild symptoms or some difficulty in social, occupational, or school functioning,
but generally the individual is functioning well and has some meaningful interpersonal

28  relationships.  Id. at 34.

11

1  after being served with these findings and recommendations, any party may file written

2  objections with the court and serve a copy on all parties.  Such a document should be captioned

3  "Objections to Magistrate Judge's Findings and Recommendations."  Any response to the

4  objections shall be filed and served within fourteen days after service of the objections.  The

5  parties are advised that failure to file objections within the specified time may waive the right to

6  appeal the District Court's order.  <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

7  Dated: December 19, 2013

8                                              /s/ Gregory G. Hollows

9                                       UNITED STATES MAGISTRATE JUDGE

12  GGH:33/lang2703.mtd.hc.fr